In re L'HOMMEDIEU.

(Circuit Court of Appeals, Second Circuit. June 20, 1906.)

No. 232.

1. BANKRUPTCY—CLAIMS—LIENS—PRIORITY.

Where a judgment against a bankrupt was a lien on certain real estate of which the bankrupt's father had died seised, and from a sale of which the fund subject to distribution arose, such claim was entitled to priority.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 531.]

2. SAME—VOID CLAIMS.

The holder of a claim against a bankrupt which was void for usury, and was secured by an assignment of funds to which the bankrupt was entitled from his father's estate, filed such assignment in the proceedings in the Surrogate's Court for the settlement of the estate, and there appeared and filed objections to the executor's account which were overruled, the account settled and the estate divided; the bankrupt's share being transferred to his trustee in bankruptcy to be distributed in the bankruptcy court as it should direct. The claimant consented to a transfer of the controversy to the bankruptcy court without formal pleadings, appeared there and litigated the questions in dispute, where his claim was litigated by the holders of junior lien creditors and assignees. Held, that the claimant was not in the position of a party brought into court against his will, so as to require payment from the fund at least of the consideration received by the debtor, but that the claimant was an active party to the proceeding, and his claim, being void for usury, should be disallowed in toto.

Appeal from the District Court of the United States for the Eastern District of New York.

On appeal from an order of the District Court for the Eastern District of New York, dated June 29, 1905, directing the distribution of a fund of $6,-802.77, held by the trustee in bankruptcy, which fund represents the share of the bankrupt in the estate of his father. The referee in bankruptcy to whom, as special commissioner, the claims of the various parties were referred, reported that the following creditors had presented secured claims in the following chronological order: 1. Alfred B. Hilton, judgment for $1,-097.96, docketed in Queens county, January 21, 1897. 2. William B. Hewlett, assignment for $3,000, October 8, 1897. 3. Francis Gilman, assignment for $5,000, November 8, 1901. 4. Mary R. King, assignment for $1,000, February 14, 1902. 5. William J. Jenner, assignment for $1,120, August 15, 1903.

The claims of Hewlett, King and Jenner were allowed by the referee and the court. The Hilton claim was disallowed by the referee but was allowed by the court. The Gilman claim was disallowed by the referee but was allowed by the court in the sum of $1,800. The appeal presents only the question of the validity of the Hilton and Gilman claims. If these claims are defeated the appellant, Mary R. King, will realize the full amount of her claim.

The opinion of the District Court, where the important facts are stated, is reported in 138 Fed. 606.

Edmund L. Baylies and Langdon P. Marvin, for appellant.

Horace Russell, and James S. Darcy, for executors representing the Hilton claim.

William R. Willcox and Robert D. Murray, for Gilman.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge (after stating the facts). The District Court found that the Hilton judgment was entitled to priority because it was a lien upon certain real estate of which the bankrupt's father died seised and out of which the fund arose. We find it unnecessary to add anything to the reasoning of the court below in reaching this conclusion, which, we think, is amply sustained by the authorities cited in the opinion. The Gilman claim remains to be considered.

Upon the judicial settlement of the final account of the executor of James H. L'Hommedieu, the father of the bankrupt, the surrogate of Queens county made an order, dated April 29, 1904, which recites, inter alia, that all persons interested in the estate were cited to attend the settlement of said account and on the return day of such citation Francis Gilman appeared by his attorneys and objected to the account of the executor which objection was overruled, the account settled and the estate divided. The order, after reciting that the trustee in bankruptcy of Howard A. L'Hommedieu was a party to the proceedings in the surrogate's court and that divers persons had appeared and claimed to be entitled to the share of the bankrupt in his father's estate, adjudged as follows: First. That the executor pay to the trustee in bankruptcy $6,802.77, the amount of such share, to be distributed by him as the court having jurisdiction of the bankruptcy proceedings shall direct. Second. "That the liens by mortgage, assignment, judgment or otherwise, proved, or sought to be proved in this pro-

ceeding, shall have the same force, validity and effect upon the said funds in the hands of said trustee after the same have been paid over by the said executor as the same now have or did have when they were in the hands of said executor."

On June 12, 1905, the district court made an order, on consent of all parties interested, referring it to the referee as special commissioner to hear and determine the claims, including that of Francis Gilman, and to pass upon the validity and legal effect of such claims. The consent to this order was signed by Francis Gilman "without prejudice to the position as defendant taken by him in the proceedings covered by the proposed order." The executors owning the Hilton judgment duly proved their claim in bankruptcy and by petition to the referee asked that the lien of the judgment might be allowed as attaching to the fund transferred from the surrogate's courts. None of the other claimants appears to have filed a formal proof of claim.

The Gilman claim is based upon an assignment and a collateral agreement which are fully described in the report of the referee who says: "This assignment and agreement are alleged to be preferred claims against the funds in the hands of the trustee by said Francis Gilman, to the amount of $5,000, with interest. This claim is contested by every other creditor alleging preferred claims, particularly by the trustee, who objects to the allowance of the claim in any amount, on the ground that the same is founded upon a corrupt and usurious loan, and is utterly void in law." The referee, after reviewing the testimony, found that the transaction was usurious and therefore void, the bankrupt receiving but $1,800 and obligating himself to pay $5,000. The District Court, in effect, confirmed the report in this respect. It is, therefore, unnecessary to discuss the testimony further than to say that the facts fully sustain this conclusion. Having found the claim void for usury the referee disallowed it in toto, but the District Court sustained it for $1,800, the amount actually received by the bankrupt on the theory that Gilman came into court in invitum in the character of a defendant at the behest of the other claimants who, without any affirmative action on his part, proved his claim for the purpose of showing its invalidity and that trustee and junior claimants must return to him the consideration received by the bankrupt before there can be a decree annulling the assignment.

The confusion which has arisen in ascertaining the legal status of the parties is largely due to the informality of the proceeding and the failure to observe the elementary rules of pleading and practice necessary to the proper presentation of such controversies. It is the opinion of the majority of the court that inasmuch as all parties consented to proceeding in this manner the hardship should be equally distributed. No one should be permitted to profit by the assertion of technical considerations based upon analogies to formal actions where the position of the parties and the burden of proof is established by proper pleadings, when, as here, all have agreed to dispense with such formalities. A majority of the court are unable to agree with the District Court in thinking that Gilman is in the position of a defendant in equity, making no claim to the fund and being forced unwillingly into a litigation in which he has asserted no interest.

The fund in question was transferred to the trustee in bankruptcy to be distributed as the District Court shall direct. Gilman either had an interest in that fund or he had not. If he had no interest and presented no claim it is not easy to see upon what theory the court fixed the amount due him at $1,800. The proposition is that the other claimants, in order to get rid of a claim, which did not exist, dragged him into court and compelled him to accept $1,800 for which he had not asked. If, on the contrary, he had a claim he must have presented it and this, we think, is what he did do. It is hardly conceivable that the referee would have received the evidence and entered upon the careful investigation, which the record shows took place, unless he and all other interested parties had understood that Gilman had presented a claim for $5,000. True, he did not actually prove his debt, but neither did the other creditors with the one exception before noted. Gilman filed a claim for $6,500 in the Surrogate's Court and a copy of the assignment had been sent by his attorneys to the executor. From the order of the surrogate, in evidence, it seems that Gilman appeared in the Surrogate's Court by his attorneys and took an active interest in the proceedings, and, as we have seen, the fund was paid over to the trustee in bankruptcy with all rights preserved. It was evidently the intention of the court and the understanding of the parties that the controversy between the claimants as it existed in he Surrogate's Court was to be transferred to the court of bankruptcy. Nothing was to be gained or lost by the change of tribunals. The claimants entered the court of bankruptcy on equal footing. Gilman had filed his assignment with the executor and as his counsel say, "He stood on his assignment and did nothing." Naturally, so long as nothing was done the assignment was prima facie proof of his claim for $5,000 and cast the burden of proving its invalidity on those interested in defeating it. We think there can be no doubt that Gilman proved his claim in the Surrogate's Court, was an active party to the proceedings there, consented to the transfer of the controversy to the District Court without formal pleadings, appeared there and litigated the questions in dispute precisely as he would have done had they remained in the state court. In these circumstances we do not think a strained construction should be resorted to in order that a claim, found by both the referee and the judge to be usurious, may take precedence of claims concededly honest.

There is another view, not alluded to by counsel, and yet, perhaps, worthy of consideration. It is difficult to trace the sequence of events from the record, but it would seem that the trustee offered in evidence the Gilman assignment at the hearing of November 13, 1903, which, it will be observed, was five months before the surrogate's order directing the transfer and a year and seven months prior to the order of the District Court referring "the claim of Francis Gilman" and others to the referee as special commissioner. Conceding, however, that this preliminary hearing may be regarded as having taken place under the order of reference and accepting for the moment the theory that Gilman occupies the position of a defendant in a court of equity, it is manifest that the trustee in bankruptcy must occupy the position of a complainant in equity. Following the analogy still

further it is apparent that Miss King, who did not initiate the proceeding, is not a complainant and must be considered as a defendant. The trustee is the only one of these claimants who stands in the shoes of the bankrupt. His interest in the fund is contingent upon defeating the other claims or reducing them below $6,802. He stands in a position of hostility to all the other claimants. It may be that if he had begun a suit in equity against Gilman to annul the assignment he, as trustee, could not obtain the fund until he had paid Gilman the amount actually received by the bankrupt. But could he thus defeat the prior lien of Miss King, who is in no way responsible for his action, even though she advanced proof in defense of her claim? Still keeping to the fiction of a suit in equity it would seem that the complainant, after having proved the assignment, abandoned the proceedings and a junior claimant, in defense of her own claim, undertook the task of proving the assignment to be usurious. In such circumstances we are inclined to think that she is entitled to defend her rights without losing them. The situation is sui generis and we have been unable to find any authority exactly in point, but, upon general principles, equity should not permit an innocent and, indeed, a helpless party to suffer from such a proceeding.

It follows that the order should be affirmed in all respects except as to the claim of Francis Gilman, which is disallowed. The appellant is entitled to costs of this court against Francis Gilman. Horace Russell and others, as executors, etc., are entitled to the costs of this court against appellant.